Susan I. SHEPHERDSON

v.

The Honorable Russell NIGRO.

Civil Action No. 97–5504.

United States District Court,
E.D. Pennsylvania.

May 13, 1998.

Rosemarie Rhodes, Philadelphia, PA, for Plaintiff.

Howard M. Holmes, Administrative Office of Pennsylvania Courts, Philadelphia, PA, for Defendant.

*MEMORANDUM and ORDER*

WALDMAN, District Judge.

Presently before the court is defendant's Motion for Imposition of Rule 11 Sanctions. Defendant seeks monetary sanctions against

Rosemarie Rhodes, plaintiff's counsel in this action. Defendant asks specifically that counsel be fined and ordered to pay attorney fees and costs to defendant. Defendant asserts that such sanctions are appropriate "based on the legally frivolous claims presented in plaintiff's complaint."

■ Plaintiff alleged that the failure of defendant, when serving as a Philadelphia Common Pleas Court judge, to recuse himself in her court case when members of the law firm representing her adversary had contributed to defendant's election campaign violated plaintiff's right to procedural and substantive due process. Plaintiff asserted a claim for damages pursuant to 42 U.S.C. § 1983. Defendant argued that plaintiff's claim was barred by the *Rooker–Feldman* doctrine, that she had failed to state a cognizable constitutional claim and that he was in any event entitled to absolute judicial immunity.

The court granted defendant's motion to dismiss plaintiff's complaint pursuant to Fed. R.Civ.P. 12(b)(6) by memorandum and order entered this date.

Although not cited by plaintiff, there is some authority for the proposition that a claim that a defendant involved in a state court decision violated a right independent of the merits of the decision is not barred by the *Rooker–Feldman* doctrine. *See Nesses v. Shepard,* 68 F.3d 1003, 1005 (7th Cir.1995).

Plaintiff can cite no case to support her claim that the failure of a state judge to recuse himself in matters where a litigant's attorney or law firm contributed to the judge's election campaign is itself an actionable violation of procedural or substantive due process. As noted in the court's memorandum accompanying the order dismissing this action, disqualification for bias is constitutionally required "only in the most extreme of cases." *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 828, 106 S.Ct. 1580, 1589–90, 89 L.Ed.2d 823 (1986).

On the other hand, there has been language in court opinions which seemed to suggest that arbitrary, capricious or improperly motivated conduct by a state actor might constitute an actionable violation of substantive due process without regard to any resulting deprivation of life, liberty or property. *See Independent Enterprises v. Pittsburgh Water,* 103 F.3d 1165, 1179 n. 12 (3d Cir.1997) (clarifying requirement that such conduct must result in deprivation of fundamental interest). "Substantive due process is an area of law 'famous for its controversy, and not known for its simplicity.'" *DeBlasio v. Zoning Bd. of Adjustment,* 53 F.3d 592, 598 (3d Cir.1995) (quoting *Schaper v. City of Huntsville,* 813 F.2d 709, 716 (5th Cir.1987)).

Plaintiff's argument that adjudication of a case by a judge who received campaign contributions from an attorney for a party is incompatible with procedural due process appears to mirror that in an often cited law review article, although it has not been cited by plaintiff. *See Safeguarding the Litigant's Constitutional Right to a Fair and Impartial Forum: A Due Process Approach to Improprieties Arising from Judicial Campaign Contributions from Lawyers,* 86 Mich. L.Rev. 382 (1987). Even the author of that expansive article, however, posited only that "extraordinary campaign contributions" from appearing lawyers to presiding judges may implicate due process considerations. *Id.* at 408. Moreover, nowhere does the author suggest, let alone cite authority to support, the availability of a direct damage claim against a judge who presides in a case in which a party is represented by an attorney who has made such a contribution. Rather, the author notes that the usual remedy for a litigant who is denied due process for reasons of bias or partiality is "a new trial with a new judge." *Id.* at 406–07.

■ Plaintiff's reading of many of the cases she cites is expansive, if not tortured. Nevertheless, although it has been accepted by no court, a "nonfrivolous argument" can be made that a judge is inherently biased in favor of a contributing attorney and that such bias is sufficient to implicate due process concerns. *See* Fed.R.Civ.P. 11(b)(2). Plaintiff's contention that a judge who fails to recuse himself in such circumstances may be sued for damages is another matter. The remedy for an unfair trial before a partial judge is a new trial before another judge.

Moreover, a judge is immune from suit on a claim predicated on his refusal or failure to recuse himself in a case which he otherwise has jurisdiction to adjudicate, whatever his motive. Plaintiff's contention that the failure of a judge to recuse himself is not a "judicial act" is objectively unreasonable, insupportable and legally frivolous. The two cases cited by plaintiff in support of this contention simply stand for no such proposition.

The first case is *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). The issue of judicial immunity was never raised or discussed in that case which concerned the failure of a neutral arbitrator to disclose his close financial relationship with a party involving the very projects underlying the parties' dispute. The Court held only that this failure to disclose warranted vacatur of the arbitral award under the federal Arbitration Act. *Id.* at 148–49, 89 S.Ct. at 339–40. The Court did not suggest that the arbitrator could be sued for damages in the circumstances.

The second case is *Tumey v. State of Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). The issue of judicial immunity was never raised or discussed in this case. The plaintiff in *Tumey* was convicted of a criminal offense and fined by a quasi-judicial officer whose income depended on the collection of fines from persons convicted. Not surprisingly, the Court found that the officer thus had the type of direct, personal, substantial pecuniary interest in the outcome of the plaintiff's criminal case which triggers due process concerns. *Id.* at 531, 47 S.Ct. at 444. The Court held that the plaintiff was entitled to have his conviction set aside. The Court did not suggest that the adjudicating official could be sued for damages for declining to disqualify himself.

Every court to address the question in a reported opinion has held that a failure to recuse is a judicial act for purposes of absolute immunity. *See Callahan v. Rendlen*, 806 F.2d 795, 796 (8th Cir.1986); *Schiff v. Dorsey*, 877 F.Supp. 73, 76 (D.Conn.1994); *Sato v. Plunkett*, 154 F.R.D. 189, 191 (N.D.Ill.1994); *Font v. Dapena Yordan*, 763 F.Supp. 680, 682 (D.P.R.1991); *Iseley v.*

*Bucks County*, 549 F.Supp. 160, 164–65 (E.D.Pa.1982). *See also Schafer v. Buhl*, 1994 WL 669688, *2 (W.D.Mich. Oct. 21, 1994) (decisions regarding recusal are "indisputably" judicial acts); *Kenard v. Nussbaum*, 1988 WL 25240, *2 (S.D.N.Y. Feb. 26, 1988).

As a practical matter, it would be a rare civil defendant who declined to avail himself of any defense or immunity provided by law. Nevertheless, as judicial immunity is a defense which theoretically may be waived if not asserted, it is at least arguable that Ms. Rhodes did not violate Rule 11(b)(2) merely by filing the damage claim against Justice Nigro. *See Boyd v. Carroll*, 624 F.2d 730, 732–33 (5th Cir.1980); *Johnson v. Miller*, 925 F.Supp. 334, 341 (E.D.Pa.1996); *Mason v. Twenty–Sixth Judicial District of Kansas*, 670 F.Supp. 1528, 1529–30 (D.Kan.1987). Because it would be so extraordinary for a party to decline the protection of absolute immunity, however, defendant's argument that the complaint in this case must have been filed to embarrass and harass him carries some force. That would be a violation of Rule 11(b)(1).

In any event, it was not reasonable for counsel to persist with the damage claim after defendant expressly asserted judicial immunity by motion and specifically alerted counsel consistent with Rule 11(c)(1)(A). *See Campana v. Muir*, 786 F.2d 188, 191 (3d Cir.1986) (attorney's persistence in prosecuting damage claim against judge for judicial action after he asserted immunity was legally unreasonable and warranted imposition of monetary sanctions); *Isakson v. First Nat. Bank of Sioux Falls*, 985 F.2d 984, 986 (8th Cir.1993) (prosecution of § 1983 damage claim against judge for allegedly colluding with attorneys improperly to rule against plaintiff in state foreclosure action warrants Rule 11 monetary sanctions).

■ The breach by counsel of Rule 11, however, does not automatically require the imposition of monetary sanctions. *See* Fed. R.Civ.P. 11(c)(2). "The court has significant discretion in determining what sanctions, if any, should be imposed for a violation." Rule 11(c) Advisory Committee Notes, 1993 Amendments. The court may issue "an admonition, reprimand or censure" in lieu of a

fine or other monetary sanction. *Id.* Courts generally consider whether the offending conduct was willful, whether it was part of a pattern of such conduct, whether counsel has engaged in similar conduct in the past, whether the conduct was intended to injure, what effect the conduct had on the time or expense of the litigation and overall what is a sufficient sanction to deter repetition of such conduct. *Id.*

■ There has been no showing or suggestion that counsel engaged in a pattern of violative conduct or in similar conduct in other litigation. The court cannot conclude that counsel willfully violated Rule 11. As noted, defendant suggests with some force that counsel's intent must have been to injure him. This is not an unreasonable inference, however, it appears just as likely that counsel lost sight of the important distinction between creative arguments and fanciful ones. Aside from the effort and expense in seeking sanctions, defendant did not incur any appreciable expense or burden in this litigation after the time he categorically asserted by motion his immunity from suit.

The court concludes that an admonition should be sufficient to deter plaintiff's counsel and other attorneys with professional pride from engaging in similar conduct in the future and is the most appropriate response to defendant's motion in the circumstances presented.

ACCORDINGLY, this 13th day of May, 1998, upon consideration of defendant's Motion for Imposition of Rule 11 Sanctions (Doc. # 6) and plaintiff's response, insofar as defendant seeks monetary sanctions, **IT IS HEREBY ORDERED** that said Motion is **DENIED**, however, counsel is admonished to exercise more care in the future to ensure her faithful compliance with the strictures of Rule 11.